IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUSAN LAFAYETTE,

    Plaintiff,

vs.                                                                                              No. CIV 04-0522 LH/RHS

DAN COBB and STANDARD INSURANCE
COMPANY,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Reinsurt [sic]/ Supplement the Record (Docket No. 37) and on Defendant Standard Insurance Company's Motion for Judgment on the ERISA Record (Docket No. 45). The Court, having considered the pleadings submitted by the parties, the arguments of counsel, the applicable law, and otherwise being fully advised, finds the Plaintiff's motion is **not well taken** and should be **denied** and that Defendant Standard's motion is **well taken** and should be **granted**.

### I. Background

The Plaintiff is an obstetrician-gynecologist. She suffered from pancreatitis during pregnancy, and underwent gallbladder removal surgery. After surgery, the Plaintiff was released and sought both short-term and long-term disability benefits from Defendant Standard Insurance Company [hereinafter "Standard"]. Her claim was denied. Upon review, that decision was reversed and the Plaintiff was paid for four days of short-term disability benefits.

The Plaintiff filed suit in the State of New Mexico's Second Judicial District Court. Defendant Standard removed the case to this Court, because the Plaintiff's claims were governed by

the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* [hereinafter "ERISA"]. The Court then granted in part a motion to dismiss certain of the Plaintiff's claims as well as Dan Cobb, the insurance agent who sold the Plaintiff her policies, as a defendant.

## II.  Legal Standard

### A.  Standard of Review

"[A] denial of benefits challenged under § 1132(a)(1)(B) [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  The plan at issue grants such discretion to Defendant Standard.  Defs' Mot. for J. on ERISA Record (Docket No. 45), Ex. A at 145-46.  Therefore, "[a] court reviewing a challenge to a denial of employee benefits . . . applies an 'arbitrary and capricious' standard to a plan administrator's actions . . . .[O]ur review is limited to determining whether [the plan administrator's] interpretation was reasonable and made in good faith." *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004) (internal quotation marks and citations omitted), *cert. denied*, 73 USLW 3465 (U.S. May 02, 2005) (No. 04-1000).

### B.  Conflict of Interest

"The possibility of an administrator operating under a conflict of interest, however, changes the analysis." *Id.*, *citing Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002). In *Firestone*, the Supreme Court held that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115, *quoting* RESTATEMENT (SECOND) OF TRUSTS § 187, cmt. d (1959).  "Following *Firestone*, the various circuit

courts attempted to put the Court's instructions into practice. Since *Firestone*, all of the circuit courts agree that a conflict of interest triggers a less deferential standard of review. The courts, however, differ over how this lesser degree of deference alters their review process." *Fought*, 379 F.3d at 1003.

"In *Chambers*, we identified two basic approaches that had emerged in interpreting *Firestone*: the 'sliding scale' approach and the 'presumptively void' approach. We explicitly adopted the former." *Id.* at 1004, *quoting Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 826-27 (10th Cir. 1996). "Under [the sliding scale] approach, the reviewing court will always apply an arbitrary and capricious standard, but the court must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict." *Id.*

In this case, Defendant Standard was operating under what the Tenth Circuit described as an "inherent conflict of interest." *Id.* at 1006, *citing Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1296 n.4 (10th Cir. 2000) (noting that "as both insurer and administrator of the plan, there is an inherent conflict of interest between [the insurance company's] discretion in paying claims and its need to stay financially sound"). "When the plan administrator operates under...an inherent conflict of interest...and the plan administrator has denied coverage, an additional reduction in deference is appropriate. Under this less deferential standard, the plan administrator bears the burden of proving the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard." *Id.*

C.  Arbitrary and Capricious Review

"In such instances, the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by

substantial evidence. The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." *Id.*

D.  Evidence Considered

"This Circuit, along with the majority of other federal courts of appeals, has held that in reviewing a plan administrator's decision for abuse of discretion, the federal courts are limited to the administrative record--the materials compiled by the administrator in the course of making his decision." *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002) (internal quotation marks and citations omitted).[1] "In determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision." *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992). "In effect, a curtain falls when the fiduciary completes its review, and for purposes of determining if substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision." *Id.* at 381.[2]

III.  Analysis

A.  Plaintiff's Motion to Supplement

The Plaintiff moved to supplement the administrative record upon which Defendant Standard Insurance Co. [hereinafter "Standard"] made her coverage decisions with material she claims was

---

[1] The Tenth Circuit's use of "abuse of discretion" does not render *Hall* substantively distinguishable, since "[w]e continue to treat the terms 'arbitrary and capricious' and 'abuse of discretion' as interchangeable in this context." *Fought*, 379 F.3d at 1003 n.2.

[2] The modified sliding-scale standard the Tenth Circuit has adopted for cases in which the insurer is operating under a conflict of interest, *Fought*, 379 F.3d at 1004, does not change this standard. Indeed, the burden of proof identified by the *Sandoval* Court in announcing that only that evidence before the administrator at the time of its benefits decision may be considered by the reviewing court, namely "determining if substantial evidence supported the decision," *Sandoval*, 967 F.2d at 381, is the same to be applied in this case due to Defendant Standard's "inherent conflict of interest." *Fought*, 379 F.3d at 1006.

-4-

provided to Standard but not in the record when the decisions in question were made. The Court granted the motion on the ground that Defendant Standard had not timely responded, Order (Docket No. 39), filed March 1, 2005, but then granted Standard's motion to set aside that Order and reconsider the motion. Order (Docket No. 57), filed June 29, 2005.

The Plaintiff cites the numerous cases that discuss the appropriate standard of review and Defendant Standard's obligations as a fiduciary. Pl.'s Mot. to Reinsurt [sic]/Supplement the Record (Docket No. 37) at 5-6. The standard of review, discussed in detail above, is not at issue. *Hall*, 300 F.3d at 1200-01; *Chambers*, 100 F.3d at 825; *Sandoval*, 967 F.2d at 380. Moreover, as the Plaintiff's complaint does not include a claim for breach of fiduciary duty, the latter cases are irrelevant here.

The same cases that establish the standard of review for cases such as this one also determine what evidence is admissible for the court applying that standard to consider. The Court is limited to that evidence that was before the administrator at the time of the benefits decision.

The Plaintiff has moved to add four affidavits and some medical records to the administrative record. Each of the four affidavits were sworn in 2004, more than a year after Defendant Standard's administrative decision had been made. All but one was sworn after the present suit was filed. By definition, they could not possibly have been considered by the administrator in making the benefits decision. They did not exist at the time of the decision. They are not appropriate evidence upon which to determine whether the fiduciary's decision was arbitrary or capricious, and they will not be considered.

The Plaintiff claims that the exhibits attached to the affidavits were not among the evidence Defendant Standard considered, and must be reviewed by the Court because it "establishes that Dr. Lafayette was temporarily totally disabled." Pl.'s Reply to Mot. to Reinsurt [sic]/Supplement the

Record (Docket No. 58) at 12. Contrary to those repeated assertions, however, most of the records with which she now seeks to supplement the administrative record are included in it. They, of course, will be considered in reviewing Defendant Standard's benefits decision.

Those that are not a part of the administrative record, while available at the time the administrative decision was made, were not considered by Defendant Standard. The question at issue here is not whether the Plaintiff is entitled to benefits, but whether Standards decision to deny benefits was arbitrary or capricious. *Fought*, 379 F.3d at 1006. Documents that were not considered by Defendant Standard in making that decision are irrelevant to that inquiry and not appropriately added at this stage in the proceedings. *Sandoval*, 967 F.2d at 381.

The Plaintiff has cited no authority to support supplementing the record in cases in which the Court applies a deferential standard to its review, probably because none exists. The Plaintiff's assertion that "the Court may find exceptional circumstances that warrant the admission of additional evidence," Pl.'s Reply to Mot. to Reinsurt [sic]/Supplement the Record (Docket No. 58) at 11, *citing Hall*, 300 F.3d at 1203, is a misrepresentation of the law. While the Court may exercise its discretion to supplement the administrative record where it conducts a *de novo* review, there is no authority for doing so where the Court employs a deferential standard of review, even where that standard is changed by the insurer's conflict of interest. *Hall*, 300 F.3d at 1200-01; *Chambers*, 100 F.3d at 825; *Sandoval*, 967 F.2d at 380.

Even if the Court had the discretion to supplement the record as in a *de novo* review, the burden in such cases falls on the party seeking to supplement the record to "show[] how that evidence is necessary to the district court's *de novo* review." *Hall v. UNUM Life Ins. Co.*, 300 F.3d 1197, 1203 (10th Cir. 2002). The Plaintiff has failed to meet that burden. The bulk of the materials

with which the Plaintiff seeks to supplement the record were considered by Defendant Standard, and the majority of those that were not post-date not only the benefits decision but also this lawsuit.

The Plaintiff's claim that Defendant Standard conducted a "very limited administrative review . . . with little or no evidentiary record," Pl.'s Reply to Mot. to Reinsurt [sic]/Supplement the Record (Docket No. 58) at 11, is specious. The initial benefits decision was based on an administrative record in excess of 500 pages that includes the medical records of seven of the Plaintiff's doctors, one nurse, and three separate medical facilities. That decision was reviewed independently by two obstetrician-gynecologists. Additional records are hardly necessary, particularly where the "new evidence" has either been included in the administrative record all along or created after the litigation began. Defendant Standard's decision to deny benefits will be evaluated in light of the administrative record it possessed at the time of that decision. The Plaintiff's motion will be denied.

B.  Defendant Standard's Motion for Judgment

Defendant Standard has moved for judgment on the ERISA record. The Plaintiff asserts, as a preliminary matter, that Defendant Standard's motion is untimely. The Initial Pretrial Report states, "[p]retrial motions, other than discovery motions shall be filed with the Court and served on opposing party by 3-21-05." Initial Pretrial Report (Docket No. 30), filed September 28, 2004. "Any deadlines established in the Initial Pretrial Report will govern actions in pretrial matters once the report is entered by the Court." D.N.M. LR-Civ. 16.1. The motion, filed on March 21, 2005, is timely and will be considered.

1.  Material Facts

Defendant Standard included in its motion for judgment a statement of undisputed material

facts, as would generally accompany a motion for summary judgment. The Plaintiff responded to that statement, admitting some facts and denying others, and offered her own statement of undisputed material facts. The present motion is not one for summary judgment, however. The Court's inquiry is a purely legal one, *Sandoval*, 967 F.2d at 380, and there are no factual determinations to be made. The scope of that inquiry itself limits the evidence this Court may consider to that which was before the administrator at the time of the benefits decision. *Id.*; *Hall*, 300 F.3d at 1201.

2. Judgment as a Matter of Law

The Plaintiff's sole argument in response to the motion, which fills less than a page of her brief, is that the documents submitted by the Plaintiff and her doctors establish that she was temporarily disabled. The Plaintiff cites *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 632 (10th Cir. 2003), in support of the proposition that because Defendant Standard did not consider these materials its decision was not entitled to deference. She argues that absent such deference the Court must find that the Plaintiff was disabled.

First of all, that is not what *Gilbertson* held. In that case, the insured's claim had been "deemed denied" because the plaintiff's appeal was not processed within the regulatory deadlines. *Id.* at 628-29. The district court reviewed the denial of the claim according to the arbitrary and capricious standard, and granted summary judgment in favor of the defendant employer. *Id.* at 630. The Court of Appeals reversed, holding that the claim should have been reviewed *de novo. Id.* "The question presented is therefore whether a plan administrator with discretionary authority whose delay in deciding a claim results in its being 'deemed denied' is entitled to judicial deference. . . . We hold that when substantial violations of ERISA deadlines result in the claim's being automatically deemed

denied on review, the district court must review the denial *de novo*, even if the plan administrator has discretionary authority to decide claims." *Id.* at 631.

It was in this context, and in describing the Supreme Court's resolution of the applicable standard of review for ERISA benefits denial cases, that the Tenth Circuit recited the language the Plaintiff claims is determinative here. *Id.* at 632 ("Deference to the administrator's expertise is inapplicable where the administrator has failed to apply his expertise to a particular decision."). In *Gilbertson*, the administrator had made no decision as to the claimant's appeal of the denial of her benefits; it was deemed denied solely because the deadlines had passed. *Id.* at 631. The language was therefore apt. In this case, by contrast, a decision was rendered. In fact, the initial denial was reversed and benefits were paid. The administrator did apply his expertise to a particular decision, and *Gilbertson* is inapposite.

All of this is, of course, beside the point. As stated above, Defendant Standard bears the burden of proving its decision was reasonable, at least neutralizing any deference that would generally be given its decision pursuant to an arbitrary and capricious review. *Fought*, 379 F.3d at 1006. In light of that burden of proof, the Plaintiff cannot, at this stage, establish that she was disabled. "[The plaintiff] is not entitled to a second chance to prove his disability. The district court's responsibility lay in determining whether the administrator's actions were arbitrary or capricious, not in determining whether [the Plaintiff] was, in the district court's view, entitled to disability benefits." *Sandoval*, 967 F.2d at 381. The only issue at hand is whether Defendant Standard's "interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." *Id.* The time for the Plaintiff to establish her disability was years ago.

a.  Terms of the Plan

The plan defines one as "disabled" for the purposes of both short-term and long-term disability benefits if "as a result of Physical Disease, Injury, Pregnancy or Mental Disorder: 1. You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and 2. You suffer a loss of at least 20% in your Predisability Earnings when working in your Own Occupation." Def.'s Mot. for J. on ERISA Record (Docket No. 45), Ex. A at 154. The plan includes a 29-day benefits waiting period during which the participant must be continuously disabled before short-term disability benefits become payable, *id.* at 159, and a 90-day waiting period before long-term disability benefits become payable. *Id.* at 129.

The plan provides that insurance coverage automatically ends when one ceases to be a "Member," *id.* at 155, which the plan defines as an "active employee of the Employer . . . Regularly working at least 30 hours each week," except "During the first 90 days of a temporary or indefinite administrative leave of absence or sick leave, provided your Employer is paying you at least the same Predisability Earnings paid to you immediately before you ceased to be a Member." *Id.* at 159, 155.

The plan's "review procedures" allow a participant who has had all or part of an short-term disability claim denied to request a review in writing within 180 days after receiving notice of the denial. *Id.* at 146. As part of this review process, a participant may send additional items to support his claim, and the review will include any such items the participant has chosen to submit. *Id.* at 145-46. The plan provides, "The person conducting the review will be someone other than the person who denied the claim and will not be subordinate to that person. The person conducting the review will not give deference to the initial denial decision." *Id.* at 145. If the denial of benefits was based on a "medical judgment," the plan requires that the person conducting the review "will consult with

a qualified health care professional. This health care professional will be someone other than the person who made the original medical judgment and will not be subordinate to that person." *Id.*

b. Application of Plan Terms

The Plaintiff ceased working on August 21, 2002. Defendant Standard considered her benefits waiting period for short-term disability to be from August 22 to September 19, 2002. The Plaintiff's employer ceased paying her predisability earnings on September 30, 2002. Defendant Standard found that the Plaintiff ceased to be a "member" eligible for coverage at that time. Each of these judgments was reasonable and supported by substantial evidence.

Defendant Standard originally found that the Plaintiff's surgery justified three weeks of recovery time away from work, *id.* at 197, and informed the Plaintiff that her claim would be denied because her recovery time would not extend beyond the benefits waiting period. *Id.* at 334-37. That decision was reviewed by an independent evaluator, who likewise concluded that three weeks was an adequate recovery period. *Id.* at 401. He specifically noted that the Plaintiff had submitted letters from two doctors that post-dated her treatment suggesting the Plaintiff's complicated pregnancy required bed rest. *Id.* at 404-06. However, the reviewing physician noted that there were no medical records accompanying the letters to support their conclusions, no mention of who made the bed rest recommendation or when it was made, and no record of any medical condition preventing the Plaintiff from returning to work three weeks after her surgery. *Id.* Defendant Standard therefore informed the Plaintiff that the review did not change its initial decision. *Id.* at 500-05.

Standard then referred the decision to deny benefits and the subsequent review thereof to a second obstetrician-gynecologist for an additional review. *Id.* at 526-29. He agreed that the surgery usually required only three weeks of recovery time, but found that an additional week was justified

because the Plaintiff was pregnant at the time. *Id.* at 527. The second reviewing physician noted that the only post-operative complaint actually documented in the Plaintiff's medical records was fatigue, *id.* at 528, and that doctors' opinions submitted by the Plaintiff were those of "coworkers" whose "arguments are emotional and not dictated by logic." *Id.* at 527. He found that the Plaintiff could have resumed full-time work after four weeks. *Id.* Defendant Standard therefore approved and paid four days of short-term disability benefits, from the end of the benefits waiting period on September 19, 2002, to the date on which the reviewing physician determined the Plaintiff could have returned to work, September 23, 2002. *Id.* at 530-34, 542.

The Court finds that Defendant Standard's interpretation of the pertinent terms of the plan was reasonable and its application of those terms to the Plaintiff's benefits claim was supported by substantial evidence. Indeed, it was supported by all the evidence. The plan offered the Plaintiff the opportunity to provide Defendant Standard additional items to support her claim. Instead, she offered the opinion letters of friends and colleagues, unsupported by medical records or other reliable evidence.

The Plaintiff has offered four affidavits in opposition to Defendant Standard's motion. Each was sworn well after the Plaintiff's claims had been denied. All but one was sworn after this suit had been filed. They were not before Defendant Standard at the time its benefits decisions were made, and are not appropriately considered at this stage. *Hall*, 300 F.3d at 1201; *Sandoval*, 967 F.2d at 380-81. Even if the Court were to consider that evidence, however, it would not establish that Defendant Standard's denial of benefits was arbitrary or capricious.

Dr. Joffe's affidavit states that "bed rest was a reasonable and medically necessary restriction." Pl.'s Mot. to Reinsurt [sic]/Supplement the R. (Docket No. 37), Ex. 2 at 3. That may

well be true. However, it was not a restriction that appeared in any of the Plaintiff's medical records or in Dr. Joffe's opinions at the time Defendant Standard made its benefits decision. Def.'s Mot. for J. on ERISA Record (Docket No. 45), Ex. A at 528, 404-06. "An administrator's decision is not arbitrary or capricious for failing to take into account evidence not before it." *Sandoval*, 967 F.2d at 381.

Dr. Hurley is the only physician who expressed his opinion that bed rest was medically necessary to Defendant Standard's decision makers. His letter, contrary to the Plaintiff's repeated assertions, was a part of the administrative record on which Standard based its decision. *Id.* at 235. It was not, however, accompanied by medical records or anything else to justify his conclusion. The opinion was considered and discounted by two reviewing obstetrician-gynecologists, one of whom considered it the opinion of a "coworker[]" whose "arguments are emotional and not dictated by logic." *Id.* at 527.

Finally, Dr. Fernandez states in his affidavit, sworn in June, 2004, that he recommended complete bed rest to the Plaintiff following her surgery. He claims that his notation, "out for remainder" on the "OB Checklist" indicated as much. Pl.'s Mot. to Reinsurt [sic]/Supplement the R. (Docket No. 37), Ex. 1-1. This document was also considered by Defendant Standard. Def.'s Mot. for J. on ERISA Record (Docket No. 45), Ex. A at 284. It was apparently not deciphered to mean what Dr. Fernandez now claims it meant, however. It was by no means unreasonable for the administrator not to interpret the notation as a recommendation of bed rest, since his records included nothing to medically necessitate bed rest or even mention the words "bed rest." In either case, it too is conclusory and unsupported by medical records.

In sum, there was nothing before the reviewing physicians, at the time of the initial benefits

decision or the reviews thereof, to indicate that the Plaintiff would require more than four weeks to recover. The Plaintiff provided to Defendant Standard no more than she now argues is insufficient to justify its denial of benefits. None of her physicians provided "proof of physical impairment that results from anatomical or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques," *id.* at 159, as the Plan requires. She ignores, however, the evidence on which Standard's doctors based their opinions.

In reviewing Defendant Standard's denial of benefits, Dr. Emmanuel Brandeis noted the following: records of the Plaintiff's visits to Southwest Medical Associates from May 9 to October 22, 2002; the Plaintiff's history, physical, and transfer summary by Dr. Joseph Fernandez of August 21, 2002; the Plaintiff's radiology consultation report by Dr. Daniel Ichel on August 21, 2002; the consultation report of Dr. Robert Lynn of August 22, 2002; the Plaintiff's Presbyterian Hospital records from August 24-29, 2002; the operative report of Dr. Robert Milne dated August 26, 2002; the pathology report of Presbyterian Hospital dated August 27, 2002; the Plaintiff's discharge summary by Dr. Fernendez on August 30, 2002; the disability insurance form completed by Dr. Fernandez on September 23, 2002; the ultrasound by Perinatal Associates on September 24, 2002; the Plaintiff's discharge summary by Dr. Milne on October 22, 2002; the memorandum of Laura Mizner, R.N., dated October 25, 2002; the report of Dr. Timothy Hurley dated October 28, 2002; the letters of Dr. Bradley Fancher dated November 14, 2002 and November 26, 2002; the report of Dr. Gary Joffe dated December 17, 2002; the letter from the Plaintiff dated December 17, 2002; the article Maternal Diseases Complicating Pregnancy submitted by the Plaintiff; the chapter Acute Pancreatitis submitted by the Plaintiff; the article Acute Pancreatitis in Pregnancy submitted by the Plaintiff; the article Rethinking the concept of risk factors for preterm delivery; the article antecedents, markers

and mediators submitted by the Plaintiff; and the article Maternal Stress and Preterm Delivery submitted by the Plaintiff. *Id.* at 400-14.

Dr. Brandeis noted that the records he consulted did not contain a concern about pre-term labor or document the necessity for the Plaintiff to limit her activity at all. *Id.* at 407. There was no documented recommendation of bed rest in the Plaintiff's records. *Id.* at 406. He also noted that Dr. Fernandez refused to answer the questions that form the basis for disability on the disability insurance form. *Id.*

The Plaintiff's claim was then referred to Dr. L.S. Casperson, another obstetrician-gynecologist. After reviewing the same materials Dr. Brandeis had, Dr. Casperson agreed with Dr. Brandeis's review, but found that the Plaintiff's pregnancy justified taking a fourth week to recover. *Id.* at 527. He specifically noted that, "There are no documented findings I could see other than the patient's complaint of fatigue. There are many speculative notations by various doctors of what might happen, but no documentation of any objective findings." *Id.* at 528. Finding that the Plaintiff could have returned to work was not only reasonable and supported by substantial evidence, but the only reasonable conclusion Defendant Standard could have reached based on the record.

The Court would be unable, on these facts, to determine that the Plaintiff was disabled. To reiterate, however, that is not what is at issue. Defendant Standard need only show that its decision was supported by substantial evidence and not arbitrary or capricious. Not only has it done that, but the Plaintiff has also shown that she offered Standard no evidence on which to reach a different conclusion. The Court therefore finds that Defendant Standard's interpretation of the terms of the plan was reasonable and that its application of those terms to the claimant was supported by substantial evidence. *Fought*, 379 F.3d at 1006. Defendant Standard is entitled to judgment as a

matter of law, and its motion will be granted.

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion to Reinsurt [sic]/Supplement the Record is **denied**.

**IT IS FURTHER ORDERED** that the Defendant Standard Insurance Company's Motion for Judgment on the ERISA Record is **granted**.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**